**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                          |   |                        |
|--------------------------|---|------------------------|
| **MARTIN WASHINGTON,**   | * |                        |
| Plaintiff,               | * |                        |
| v.                       | * | Case No.: PWG-16-320   |
| **W.D. ROUNDS,** *et al.,* | * |                        |
| Defendants.              | * |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Martin Washington is an inmate incarcerated at the North Branch Correctional Institution ("NBCI") in Maryland. Am. Compl. ¶ 13, ECF No. 46. Washington alleges that on multiple occasions he was physically harmed by the corrections officers at NBCI. *Id*. ¶¶ 21, 37, 42. Based on this alleged conduct, Washington brought a civil action against the officers under 42 U.S.C. § 1983. Compl., ECF No. 1. Now, during the course of his § 1983 action, Washington moves for a temporary restraining order, preliminary injunction, and an order to show cause as to why the officers should not be sanctioned for spoliation of evidence. Pl.'s Mot., ECF No. 66.[1] A hearing was held on November 21, 2017, during which I heard argument from counsel. Washington's motion, treated as a motion for a preliminary injunction, is denied without prejudice because he has not shown that he is likely to succeed on the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). But because Washington has raised serious allegations that Defendants (or their supervisors) may have committed spoliation

---

[1] The parties fully briefed the motion. ECF Nos. 66-3, 67, 73.

of evidence, I am ordering that discovery be taken under the supervision of a United States Magistrate Judge to determine whether there has been a failure to preserve relevant evidence, and, if so, whether sanctions under Fed. R. Civ. P. 37(e) are warranted.

## **Preliminary Injunction**

The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a temporary restraining order only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.,* 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)).[2] As a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

To obtain a preliminary injunction, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Id.* at 20; *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). "A preliminary injunction cannot be issued unless all four of these elements are met, and '"[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction."'" *Williams v. JP Morgan Chase Bank*, No. RDB-16-00312, 2016 WL 509426, at \*3 (D. Md. Feb. 4, 2016) (slip op.) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952

---

[2] The Defendants were provided notice and responded to the motion. Therefore, I will construe Washington's motion as a motion for a preliminary injunction. *See* Fed. R. Civ. P. 65(a).

F.2d 802, 812 (4th Cir. 1991) (citation omitted)); *see Real Truth About Obama v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (holding that each element must be satisfied as articulated). "[T]he burden placed upon Plaintiffs to state a claim for a preliminary injunction is high." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 538 (D. Md. 2014); *see Fowler v. Wells Fargo Home Mortg., Inc.*, No. GJH-15-1084, 2015 WL 2342377, at *2 (D. Md. May 13, 2015) (same).

To meet the first requirement, the plaintiff must "clearly demonstrate that he will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth,* 575 F.3d at 346–47 (emphasis from the original). Only "providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*" does not meet the rigorous standard required under the *Winter* and *Real Truth* decisions. *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. 2012). In the prison context, courts should grant preliminary injunctive relief respecting the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman,* 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Here, Washington alleges in his Amended Complaint that Officer W.D. Rounds, Jr. deliberately closed a metal food slot on his hand, fracturing it, and that he was sprayed with mace as well as beaten by the Defendants, stripped naked and had his head rammed into the wall of the showers, for which he did not receive prompt medical attention for the injuries he suffered. Am. Compl. ¶¶ 14–58. Washington contends that, since initiating this case, he has been the victim of new acts of violence, the purpose of which are to intimidate him. Pl.'s Mem. 2. He

also asserts that Officer Joshua Tart, a non-party, punched him in the face while Washington was handcuffed as retaliation "for filing a lawsuit on my buddys [sic]." *Id*. (edits in original). Washington also asserts that Officers Warren Mallow and Shawn Murray threatened him after the initiation of his suit. *Id.* at 2–3. Washington has submitted an affidavit attesting to these events, ECF No. 66-4, as well as an affidavit by Keith Edmonds who states that he witnessed Officer Murray threatening Washington, ECF No. 66-5. Lastly, Washington contends that he has submitted three Inmate Request Forms to the Security Chief seeking to preserve surveillance video that could corroborate his claims, and to the Warden informing him of the retaliatory acts taken against him that have been ignored. Pl.'s Mem. 2. Aside from the two affidavits, the only evidence indicating the alleged actions occurred are three Inmate Requests Forms (to the Security Chief and Warden), ECF No. 66-6, which Washington claims to have completed and filed with NBCI, but which have not been acknowledge as received.

Defendants argue that Washington has not exhausted his administrative remedies and that the requested relief is unavailable because it requires a non-party to act. Defs.'s Opp'n. In support of their opposition, Defendants have submitted various affidavits that contradict Washington's allegations. ECF Nos. 67-3–67-8. Defendants point to three affidavits that demonstrate that they have no record of Washington submitting any complaints regarding the alleged incidents. *See* White Aff. ¶¶ 5–7, ECF No. 67-8; Bohrer Aff. ¶ 5, ECF No. 67-6; Armstrong Aff. ¶ 4, ECF No. 67-7. Defendants insist that the only complaint NBCI received from Washington during July and August 2017 is that he was denied medications and dinner. *See* White Aff. ¶ 7; Armstrong Aff. ¶ 4. In reply, Washington argues that a July 21, 2017 video recording, which is not part of the record before me and allegedly depicts Officer Rounds punching him, was destroyed and that he was impeded from administratively exhausting his

4

claims, and that those circumstances sufficiently demonstrate that he should be afforded relief in the form of a preliminary injunction. Pl.'s Reply 1–7. Washington's allegations, supported by his copies of the Inmate Request Forms that he claims he submitted to NBCI staff, form the basis for his argument that his efforts to administratively exhaust his claims have been impeded, and that evidence spoliation is taking place.

However, regardless of whether Washington administratively exhausted his claims, his motion suffers from a significant deficiency: factual disputes. For example, Officer Tart attests that on the date he is alleged to have punched Washington, he was not working in Washington's housing unit but in a different building at NBCI. Tart Aff. ¶¶ 3–4, ECF No. 67-5. Office Murray attests that he was not even working on the day he is alleged to have threatened Washington. Murray Aff. ¶ 2, ECF No. 4.

The preliminary injunction standard is not whether it is *plausible* for a plaintiff to succeed, but whether it is *likely*. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011); *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346–47 (4th Cir. 2009). As noted, significant factual disputes exist as to whether the alleged events occurred. First, it is unclear if Officer Tart was ever in the housing unit or if Officer Murray was working on the days in question. These are but two situations where Washington's allegations are in direct contradiction of affidavits Defendants have provided.

Like Judge Motz, to whom this case previously was assigned, I cannot conclude on the disputed facts before me that Washington is likely to succeed on the merits of his claims against the individual defendants. *See* Order Den. Mot. for Prelim. Inj., ECF No. 15; *Rogers v. Housing Auth. of Prince George's Cty.*, PWG-14-2940, 2015 WL 5287128, at *9 (D. Md. Sept. 8, 2015);

*Torres Advanced Enter. Sols. LLC v. Mid-Atl. Prof'ls Inc.*, No. PWG-12-3679, 2013 WL 531215, at *3–4 (D. Md. Feb. 8, 2013); *Chattery Int'l, Inc. v. JoLida, Inc.,* No. WDQ-10-2236, 2011 WL 1230822, at *9 (D. Md. 2011). Much of the record is made up of affidavits where a fact finder could find either version of any of the alleged events credible. Therefore, it is not possible at this time to find that Washington is likely to succeed on the merits. Because Washington has not established this critical element, I need not reach the other elements. *See Real Truth*, 575 F.3d at 347; *Williams*, 2016 WL 509426, at *3.

Lastly, as relief, Washington asks me to—and argues that I may—direct the State and NBCI to take various actions (e.g., transfer Washington, prohibit Defendants from supervising him during the course of the litigation), despite the fact that neither the State nor NBCI are parties to this litigation. Washington points to one case from outside the Fourth Circuit, *Rivera v. Dyett*, No. 88 CIV. 4707 (PKL), 1992 WL 233882 (S.D.N.Y. 1992), which provides at most persuasive authority. However, inmates have no liberty interest in placement in a particular prison, and prison officials have broad discretion to classify inmates and assign them to appropriate prison housing. *See* 18 U.S.C. § 3621(b); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Additionally, courts should exercise great caution before interfering with the day-to-day administration of a prison. *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979) (explaining that day-to-day administrative decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (quoting *Pell v. Procunier*, 417 U.S. 817, 824 (1974)). Consequently, even if Washington satisfied the elements for preliminary injunctive relief, it is

unlikely that the relief he requests is available against the State of Maryland or NBCI.

Therefore, at this time, I must deny Plaintiff's Motion for a Preliminary Injunction. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). I do so, however, without prejudice. In the event Washington demonstrates the conduct described is in fact ongoing and shows he is likely to succeed on the merits, he can renew his request for injunctive relief at that time.

But the fact that Washington has not met the standard for a preliminary injunction does not mean that he has not raised serious issues about whether Defendants (or others not yet defendants)[3] have been preventing his Inmate Request Forms and other administrative relief requests from being processed as required, or have been interfered with. And, equally concerning, is his allegation that Defendants or others at NBCI who are not currently defendants have engaged in spoliation of evidence to prevent him from having access to surveillance videos

---

[3] The record before me shows that, at a minimum, William Bohrer, Chief of Security at NBCI, John White, Correctional Case Management Specialist II, and Wendy Armstrong, Secretary for the Assistant Warden (and through her, the Assistant Warden and Warden at NBCI) are aware of Washington's allegations of retaliation, interference with his efforts to exhaust administrative remedies, and spoliation of evidence. *See* Bohrer Aff.; Armstrong Aff.; White Aff. They are not, at present, parties and it is generally true that supervisory correctional officials may not be sued in their official capacity under § 1983 (except for injunctive relief) because that is tantamount to a suit against the state itself, and is barred by Eleventh Amendment immunity. *Cottman v. Maryland*, No. RDB-16-3306, 2017 WL 3727455, at *5–6 (D. Md. Aug. 30, 2017); *McIntosh v. Div. of Corr.*, No. PWG-16-1320, 2017 WL 3412081, at *4 (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)). Nonetheless, assuming a Fed. R. Civ. P. 11 basis exists for suing such supervisory officials in their individual capacities, or official capacities seeking only injunctive relief, there may be a basis for amending the Complaint to do so. *See Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001) ("Supervisory liability under 42 U.S.C. § 1983 must be supported with evidence: '1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'") (quoting *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)); *Watts v. Green*, No. DKC-13-3716, 2015 WL 518587, at *4 (D. Md. Feb. 5, 2015) (same).

that could corroborate his version of events. When inmates bring civil suits they are usually met by affidavits from correctional officers allegedly involved denying the claims—creating a fact dispute that can make it difficult, or impossible, for the inmate to obtain preliminary injunctive relief. The record before me shows that there is at least some evidence to support Washington's claims of interference with his efforts to seek administrative relief, *see* Inmate Request Forms, and spoliation of evidence, *see id.* at 3 (requesting NBCI Chief of Security preserve the video surveillance footage that could substantiate his claims). And some of the affidavits submitted by Defendants, *see e.g.*, Bohrer Affidavit, raise more questions than they answer.

For this reason I am ordering that discovery be taken regarding (1) Plaintiff's Inmate Request Forms and why they appear to have not been processed once filed; and (2) whether spoliation was committed by Defendants or their supervisors with respect to surveillance video. With respect to the latter issue, the appropriate authority to govern this dispute is not the court's inherent authority, as Washington argues, but Fed. R. Civ. P. 37(e). AS I mentioned during the hearing, the duty to preserve evidence relevant to Plaintiff's claims (including videotape footage of his interactions with correctional officers) clearly has been triggered.

To insure that this discovery is accomplished expeditiously and with the least amount of burden and expense, I am assigning a United States Magistrate Judge to supervise and preside over this discovery. With the assistance of the Magistrate Judge, the parties shall meet (in person) and propose a discovery plan to address these issues, to be approved (then supervised) by the Magistrate Judge. They also will, with the assistance of the Magistrate Judge, prepare a preservation order for my approval to insure that relevant video surveillance is not recorded over, lost, or destroyed. Finally, counsel for Defendants are reminded that they have an ethical duty to advise their clients (and their supervisors) regarding their duty to preserve evidence relevant to

this lawsuit and the consequences for failing to do so. In this regard, counsel would be prudent to insure that the Security Chief and Warden, who are not at this time parties to this case, exercise appropriate oversight to insure that their subordinates do not destroy or misplace relevant evidence or interfere with the processing of Plaintiff's Inmate Request Forms and requests for administrative relief.

Accordingly, it is, this <u>27th</u> day of November, 2017, for the reasons stated in this Memorandum Opinion and Order, it is hereby ORDERED that

1. Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Sanctions, treated as a motion for a preliminary injunction, ECF No. 66, IS DENIED without prejudice; and

2. I will refer this case to a United States Magistrate Judge to supervise discovery into the two areas discussed above.

/S/<br>
Paul W. Grimm<br>
United States District Judge

jml